```
                    IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIO GAUSE,                      :    CIVIL ACTION
                                  :    NO. 07-3752
     Plaintiff,                   :
                                  :
                                  :
     v.                           :
                                  :
C.O. DOMBROWSKY,                  :
                                  :
     Defendant.                   :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              NOVEMBER 17, 2008

      Defendant, C.O. Dombrosky, and Plaintiff, Mario Gause, filed cross motions for summary judgment under Fed. R. Civ. P. 56(b) (doc. nos. 12 and 13). For the reasons that follow, Defendant's motion for summary judgment will be granted (doc. no. 12) and Plaintiff's motion for summary judgment (doc. no. 13) will be denied.

I. BACKGROUND[1]

      Plaintiff Mario Gause initiated this lawsuit, alleging violations of his civil rights under 42 U.S.C. § 1983, which occurred while he was an inmate at the State Correctional Institution at Graterford ("Graterford"). (Doc. no. 1). Plaintiff alleges that such violations arose out of two separate

---

[1] The facts presented are drawn from Plaintiff's complaint and deposition, and when disputed are viewed in the light most favorable to Plaintiff.

1

incidents at Graterford.

The first incident concerns alleged "sexual harassment," occurring on July 21, 2007, while Plaintiff used the lavatory in his cell. (Doc. no. 12, Ex. 1, pp 10). Specifically, Plaintiff alleges that Defendant entered Plaintiff's cell, knocked a towel to the floor that Plaintiff used to block the view of the toilet area, and stayed in the cell for 90 seconds while Plaintiff remained on the toilet. (Id. at 10-12). Plaintiff contends that Defendant did not physically touch him, but stood over him, and looked at his midsection with "this smirk on the right side of his face." (Id. at 10, 12). Following this incident, Plaintiff filed a grievance, which was later dismissed after the reviewing officer found no wrongdoing. (Id. at 11). Subsequently, Plaintiff filed an appeal, which was also dismissed. (Id. at 11, 13, 18).

The second incident concerns an allegedly threatening experience for Plaintiff which occurred in the security office of Graterford. Plaintiff construed the incident as retaliation against him for exercising his grievance privileges. (Id. at 21). On August 20, 2007, Defendant, after learning that Plaintiff was investigating Defendant's full name, called Plaintiff to the security office and inquired as to why Plaintiff

needed this information.[2]  (Id. at 24).  Plaintiff responded that he needed Defendant's name for "filing paperwork," to which Defendant stated, "I don't want to hear you asking about names again, got it?"  (Id. at 19).  Plaintiff contends that he has not spoken to Defendant since that date, but alleges that he "feels uncomfortable" when in Defendant's presence.  (Id. at 30).

After deposing Plaintiff, Defendant filed a motion for summary judgment (doc. no. 12), arguing that his conduct in conjunction with both incidents does not rise to the level of a constitutional or federal law violation.  Moreover, Defendant argues that he is entitled to qualified immunity from this suit.  Plaintiff responded to Defendant's motion for summary judgment and filed a cross motion for summary judgment, relying upon Defendant's responses to Plaintiff's interrogatories (doc. nos. 13 and 14).

II. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits,

---

[2] Plaintiff contends that Defendant was aware of the difficulty that Plaintiff would have in walking to the security area as a result of Plaintiff's "serious medical condition." (Doc. no. 13, pp 10).  Plaintiff asserts that he suffers from a "herniated disc, diffuse annulus bulging" and "poor circulation in [his] legs" leading to headaches and neck pain.  (Doc. no. 12, Ex. 1, pp 14).

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  Id. at 248-49.  "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof."  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)).  Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in [Rule 56]--set out specific facts showing a genuine issue for trial."  Fed. R. Civ.

P. 56(e)(2).

III. ANALYSIS

    A.   <u>Defendant's Motion for Summary Judgment</u>

Defendant asserts that he is entitled to qualified immunity, excusing him from liability for Plaintiff's § 1983 action. Section 1983 of Title 42 of the United States Code provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of state law.[3] See <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002) (recognizing that Section 1983 provides a remedy for violations of individual rights "secured by the Constitution and laws" of the United States). When an officer's conduct gives rise to a § 1983 claim, the privilege of qualified immunity, if appropriate, can serve as a "shield from suit." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991).

"Qualified immunity is 'an entitlement not to stand

---

[3] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  Pursuant to the test articulated in Saucier, qualified immunity claims are evaluated using a two-part process. Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2001).  "First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation." Id.  If no constitutional violation occurred, the inquiry ends here and qualified immunity is appropriate.  Id.  However, if there is a constitutional violation, the court proceeds to the second step and determines whether the constitutional right was clearly established; that is, "would a reasonable officer have understood that his actions were prohibited."  Id.  If there is a violation of a constitutional right which is not clearly established, qualified immunity is appropriate.  Id. at 137.

In making the threshold determination in the qualified immunity analysis, the Court turns to Plaintiff's individual claims proffered in his motion for summary judgment.  For the reasons that follow, qualified immunity is appropriate and Defendant's motion for summary judgment will be granted.

   1.   Eighth Amendment Violation

Plaintiff alleges that his Eighth Amendment right against cruel and unusual punishment was violated in two ways: (1) Defendant's "sexual harassment" of Plaintiff in the lavatory

area; and (2) Defendant's request that Plaintiff walk to the security area, knowing of Plaintiff's medical condition.  The Supreme Court has interpreted the Eighth Amendment's prohibition against cruel and unusual punishment as prohibiting "unnecessary and wanton infliction of pain." Hudson v. McMillan, 503 U.S. 1, 5 (1992)(citing Whitley v. Albers, 475 U.S. 312, 319 (1986)).  To determine whether a defendant violates a plaintiff's Eighth Amendment right, the Court must analyze: (1) whether the defendant acted with a sufficiently culpable state of mind; and (2) whether the alleged wrongdoing was "sufficiently serious" to establish a constitutional violation.  Hudson, 503 U.S. at 7.

a.  Sexual Harassment Claim

In instances where prison officials are accused of violating a prisoner's Eighth Amendment rights as a result of sexual harassment, the Third Circuit lacks precedent on this potential violation; however, other Circuits provide guidance for the Court.  For example, the Ninth Circuit held that the Eighth Amendment is violated when an inmate endures verbal sexual harassment from prison guards plus physical sexual assault or threats of physical sexual assault. Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000).  However, the Seventh Circuit held that mere verbal sexual harassment, without accompanying physical contact, is not enough to state a claim for an Eighth Amendment violation. DeWalt v. Carter, 224 F.3d 607, 612 (7th

Cir. 2000).

Here, Defendant's conduct in the lavatory does not rise to the requisite level of sexual harassment to constitute an Eighth Amendment violation. It is questionable as to whether Defendant's conduct amounts to harassment at all as he did not physically touch Plaintiff, nor engage in verbal harassment. While Defendant's presence in Plaintiff's cell may have made Plaintiff uncomfortable, no Eighth Amendment violation occurred.

        b.   Excessive Force Claim

In cases where prison officials are accused of using excessive force against a prisoner, the core issue is whether the officer's use of force was applied "in good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." Hudson, 503 U.S. at 6-7. Factors which may aid in determining whether the force utilized by the officers was unnecessary include: "(1) the extent of the injuries suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the officers; and (5) any efforts made to temper the severity of the forceful response." Id. at 7.

Defendant's request that Plaintiff walk to the security area, even assuming that Defendant knew of the difficulty that Plaintiff would experience as a result of his medical condition,

-8-

does not constitute excessive force worthy of Eighth Amendment protection.[4]  In reaching this conclusion, the Court considers the factors delineated in Hudson.

First, the Court evaluates the extent of Plaintiff's injuries and concludes that Plaintiff failed to allege specific injury caused by the walk to security, beyond suggesting potential aggravation to his existing herniated disc.

Second, even assuming that the walk caused injury to Plaintiff, the Court finds that Defendant had a legitimate reason for subjecting Plaintiff to the walk to security because Defendant was justified in investigating why Plaintiff sought his full name.

Third, the relationship between the Defendant's need to speak with Plaintiff in the security office and the minimal injury that Plaintiff experienced during the walk was proportionate.  Defendant knew that Plaintiff did not confine himself to his cell and thus it is a stretch for the Court to construe Plaintiff's walk as any sort of force inflicted against

---

[4] Defendant contends that he was unaware of Plaintiff's physical condition that would make it painful for him to walk to security.  Pl.'s Interrogs. pp 2.  For the purposes of evaluating Defendant's motion for summary judgment, the Court views the facts in the light most favorable to the Plaintiff and assumes Defendant knew of Plaintiff's medical condition.

Plaintiff.[5]

Fourth, the Court finds that Defendant perceived a legitimate threat, worthy of further exploration, when he learned that Plaintiff sought his full name.

Finally, the Court finds that because Defendant's response to Plaintiff's threat was minimal at best, there is no readily apparent way that he could have mitigated the force used against Plaintiff. Because excessive force was not used against Plaintiff, no Eighth Amendment violation occurred as a result of Plaintiff's walk to the security area.

2. First Amendment Violation

Plaintiff alleges that Defendant infringed upon his First Amendment rights by retaliating against him for filing a grievance related to the lavatory incident. Specifically, Plaintiff contends that Defendant threatened him by stating: "I don't want to hear you asking about names again, got it?" (Doc. no. 12, Exh. 1, pp 19).

In order to prevail upon a retaliation claim under the First Amendment, a plaintiff must prove the following elements: (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising

---

[5] Plaintiff noted that he walks to his job and medical facilities, both 25-30 yards from his cell. (Doc. no. 12, Ex. 1, pp 16-17).

his constitutional rights; and (3) a causal link between the constitutionally protected conduct and retaliatory action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Here, Defendant does not contest that Plaintiff has a constitutionally protected right to appeal the outcome of prison grievances. Instead, Defendant asserts that the alleged threat does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from appealing the outcome of prison grievances.

In evaluating the alleged retaliatory action, the Court notes that it is questionable as to whether Defendant's statement constituted a verbal threat. Defendant indicated he did not want to hear about Plaintiff "asking about names," but failed to articulate a threatening consequence which would ensue if Plaintiff continued this behavior.

Even assuming that the statement was a verbal threat, no First Amendment violation occurred here. Allegations of verbal abuse or harassment, unaccompanied by a reinforcing physical act, are generally not actionable under § 1983. Compare Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (reasoning allegation of vulgarity did not state constitutional claim); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (finding allegations that sheriff laughed at prisoner and

-11-

threatened to hang him did not state claim for constitutional violation); S.M. v. Lakeland Sch. Dist., 148 F. Supp 2d 542, 551 (M.D. Pa. 2001) (holding that verbal and psychological abuse alone, without evidence of physical force, did not constitute a constitutional violation); and Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995) (finding that allegations that prison official verbally threatened inmate did not constitute constitutional violation, without physical force); with Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir. 1992) (finding an actionable claim when guard put revolver to inmates head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395, 398 (D. N.J. 1988) (stating claim where prison employee threatened inmate with knife).

In this case, beyond alleging that Defendant "slapped [the pass and ID] down in [Plaintiff's] hands," Plaintiff fails to allege an accompanying act to reinforce Defendant's threat. Accordingly, Defendant's statement cannot serve as the basis for a § 1983 action.

### 3. Fourth Amendment Violation

Plaintiff alleges that Defendant violated his Fourth Amendment rights by conducting an unreasonable strip search in the view of other inmates.  The Court need not conduct this analysis because Plaintiff was not subjected to a strip search.

Here, Defendant did not require Plaintiff to remove any clothing, nor expose any part of his body. As Defendant entered Plaintiff's cell, Plaintiff was using the lavatory, and Defendant stood in the cell, keeping the door ajar. Accordingly, no strip search occurred and the Court need not analyze a potential Fourth Amendment violation.[6]

Because no constitutional violation occurred, Defendant is entitled to qualified immunity as to Plaintiff's § 1983 claim. The Court need not consider the second prong of the qualified immunity test articulated in Saucier.

B.   Plaintiff's Motion for Summary Judgment

When confronted with cross-motions for summary judgment

---

[6] Plaintiff cites two cases in support of his Fourth Amendment argument, both of which are distinguishable. First, Plaintiff cites Shain v. Ellison, where the Second Circuit held that an unlawful strip search occurred where a person charged with a misdemeanor and remanded to a local correctional facility was required to remove all his clothes and submit to a visual body cavity search, absent reasonable suspicion. 273 F.3d 56, 66 (2d Cir. 2001). Second, Plaintiff cites Farmer v. Perrill, where an inmate was required to remove all clothing and "present" all areas of the body, in the presence of other inmates. 288 F.3d 1254, 1257, 1259 (10th Cir. 2002).

Both Shain and Farmer are distinguishable because the plaintiffs in those actions were required to remove clothing and submit to the strip search. Here, Plaintiff was not asked to remove clothing, but rather he had already voluntarily removed some clothing for a purpose different than submission to a strip search.

"the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Falcone v. Teamsters Health & Welfare Fund, 489 F. Supp. 2d 490 (E.D. Pa. 2007)(quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kane, Federal Practice and Procedure § 2720 (1998)).  Although cross motions for summary judgement must be considered separately on the merits, a determination of a common issue of law may be dispositive of both motions.  St. Paul Fire & Marine Ins. Co. v. Turner Constr. Co., No. 07-270, 2008 U.S. Dist. LEXIS 26903, at *2 (E.D. Pa. April 2, 2008).

In support of his motion for summary judgment, Plaintiff argues that there is no genuine issue of material fact as to the violations of his Eighth Amendment, Fourth Amendment, and First Amendment rights, which occurred in conjunction with the two incidents at issue.  (Doc. no. 13).  As discussed above, Plaintiff failed to show entitlement as a matter of law as to each of these alleged violations.[7]  Accordingly, Plaintiff's

---

[7] Defendant failed to respond to Plaintiff's Motion for Summary Judgment.  Plaintiff filed two letters with the Court requesting that his motion for summary judgment be granted under 56(e), as a result of Defendant's failure to respond to Plaintiff's motion for summary judgment (doc. nos. 15 and 16). Pursuant to Federal Rule of Civil Procedure 56(e)(2): "when a motion for summary judgment is properly made and supported, and opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as

motion is denied.

An appropriate order follows.

---

otherwise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if <u>appropriate</u>, be entered against that party."

Although 56(e) requires a non-moving party to set forth facts showing a general issue for trial, it is "well settled . . . that this does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond." <u>Anchorage Assoc. v. Virgin Islands Bd. of Tax Review</u>, 922 F.2d 168, 175 (3d Cir. 1990) (quoting <u>Jaroma v. Massey</u>, 873 F.2d 17 (1st Cir. 1989)). Rather, as the Rule 56(e) provides, the court must determine whether summary judgment is <u>appropriate</u> under the circumstances. In order to determine whether summary judgment is appropriate, the court must determine whether the moving party has shown itself to be entitled to judgment as a matter of law. <u>Id.</u>

For the reasons set forth above, Plaintiff is not entitled to summary judgment and thus this is not an appropriate circumstances for judgment under Rule 56(e)(2).

```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIO GAUSE,                      :    CIVIL ACTION
     Plaintiff,                   :    NO. 07-3752
                                  :
                                  :
     v.                           :
                                  :
C.O. DOMBROWSKY,                  :
                                  :
     Defendant.                   :
```

### O R D E R

**AND NOW**, this **17th** day of **November 2008**, upon consideration of the parties' cross motions for summary judgment (doc. nos. 12, 13) and response thereto (doc. no. 14), it is hereby **ORDERED** that:

   **1.**   Defendant's motion for summary judgment (doc. no. 12) is **GRANTED;** and

   **2.**   Plaintiff's motion for summary judgment (doc. no. 13) is **DENIED.**

**IT IS FURTHER ORDERED** that the case shall be marked **CLOSED**.

**AND IT IS SO ORDERED.**

                                              S/Eduardo C. Robreno
                                             **EDUARDO C. ROBRENO, J.**